UNITED STATES DISTRICT COURT

Northern District of California

DARLENE V. MAIRENA, through her conservator, MARIA C. MAIRENA,

        Plaintiff,

   v.

ENTERPRISE RENT-A-CAR HOSPITAL INSURANCE PLAN, ENTERPRISE RENT-A-CAR COMPANY, UNITED HEALTHCARE INSURANCE CO., and INGENIX,

        Defendants.

No. C 09-4420 MEJ

**ORDER RE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM [Dkt. #14]**

## I. INTRODUCTION

Pending before the Court is Plaintiff/Counter-Defendant Darlene Mairena, through her conservator Maria Mairena, and Third-Party Defendant Albert G. Stoll, Jr.'s Motion to Dismiss Counterclaim (Dkt. #14).[1] Defendants/Counterclaimants Enterprise Rent-A-Car Hospital Insurance Plan ("the Plan") and Enterprise Holdings, Inc. ("Enterprise") have filed an Opposition (Dkt. #18), to which Plaintiff filed a Reply (Dkt. #20). On December 10, 2009, the Court held oral argument in this matter. After careful consideration of the parties' briefs and oral argument, and review of the controlling legal authority, the Court now rules as follows.

## II. BACKGROUND

Plaintiff is a former employee of Enterprise Rent-A-Car. (Dkt. #1, Complaint ¶ 6.) Enterprise sponsors and is a fiduciary of the Enterprise Rent-A-Car Hospital Insurance Plan, which is an employee welfare benefit plan under the Employment Retirement Income Security Act of 1974

---

[1] On December 7, 2009, the parties stipulated to dismiss Mr. Stoll as a third-party defendant. (Dkt. #24.)

("ERISA"), § 3(1), 29 U.S.C. § 1002(1).  (Dkt. #4, Counterclaim at 1, ¶ 5.)  The Plan provides welfare benefits to eligible Enterprise employees, including medical benefits.  (*Id*. ¶ 8.)  During her employment with Enterprise, Plaintiff was a participant and beneficiary in the Plan under ERISA § 3(7), (8).  (*Id*. at 2, ¶ 6.)

On February 14, 2006, Plaintiff began to experience symptoms, which were later diagnosed as a blood clot in her brain.  (Compl. ¶ 6; Counterclaim ¶ 23.)  The blood clot caused serious brain damage, resulting in spastic quadriplegia.  (Compl. ¶ 6.)  As a result of the injury, Plaintiff is now mentally incompetent and unable to care for herself, requiring full-time nursing care.  (*Id*.)  Between February 2006 and 2008, the Plan paid $1,373,431.14 for medical services on Plaintiff's behalf in connection with her injury.  (Compl. ¶ 6; Counterclaim ¶ 25.)

The blood clot was caused by Plaintiff's use of a defective birth control patch.  (Compl. ¶ 6; Counterclaim ¶ 24.)  Plaintiff, as part of a class action lawsuit, sued the manufacturer of the patch for damages and was represented by Albert G. Stoll, Jr.  (Compl. ¶ 7; Conterclaim ¶ 24.)  In May 2007, the Plan notified Mr. Stoll of its potential subrogation/reimbursement rights relating to the medical benefits paid on Plaintiff's behalf.  (Counterclaim ¶ 27.)  Over the course of 2007 and 2008, Mr. Stoll and the Plan communicated with each other regarding the status of the lawsuit, the amount of medical benefits the Plan had paid on Plaintiff's behalf, and the amount of the lien the Plan was claiming against any potential settlement.  (*Id*. ¶ 28.)  In May 2009, Plaintiff settled her case against the manufacturer for a confidential amount, which was approved by the court presiding over the lawsuit.  (Compl. ¶ 7; Counterclaim ¶ 29.)

Subsequently, on September 21, 2009, Plaintiff filed the instant lawsuit, seeking declaratory and injunctive relief concerning Defendants' assertion that they are entitled to $1.37 million from Plaintiff's settlement pursuant to a provision in the Summary Plan Description entitled, "Recovery of Settlements, Reimbursement, and Subrogation."  (Dkt. #1, Complaint at 5.)  Thereafter, on October 14, 2009, Defendants filed a Counterclaim, alleging that pursuant to the reimbursement and subrogation provision the Plan is entitled to reimbursement from Plaintiff's settlement proceeds for the amount of benefits it paid in connection with her injury, but Plaintiff has refused to turn over

2

such amount. (Counterclaim ¶¶ 11, 12, 31, 32, 33, 40, 41.)  Defendants therefore seek equitable relief pursuant to § 502(a)(3) of ERISA enforcing the terms of the plan, and request that the Court: (1) impose a constructive trust or equitable lien by agreement in favor of the Plan upon settlement proceeds in Plaintiff or Mr. Stoll's possession; (2) declare the Plan's ownership of the settlement proceeds up to the full amount of payments that the Plan made for Plaintiff's medical expenses related to her injury; and (3) order Plaintiff or Mr. Stoll to pay or turn over the settlement proceeds, plus accumulated interest, to the Plan to the extent of its interest therein.  (*Id.* ¶ 43.)

Plaintiff now moves to dismiss Defendants' Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In order to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557.)  In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true.  *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The plaintiff's complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  In reviewing a motion to dismiss, courts may also consider documents attached to the complaint.  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).  If the court dismisses the complaint, it "should grant leave

to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000).

## IV. DISCUSSION

In her Motion, Plaintiff seeks to dismiss Defendants' Counterclaim on several grounds. First, Plaintiff contends that the reimbursement provision violates the mandatory drafting provisions for summary plan descriptions set forth in 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102-2, and is therefore unenforceable. Second, Plaintiff asserts that because the reimbursement provision strips all equitable defenses, the relief Defendants seek pursuant to the provision is legal in nature and therefore does not qualify as the type of "appropriate equitable relief" authorized under § 502(a)(3) of ERISA. Third, Plaintiff argues that Defendants' counterclaim seeking reimbursement through a constructive trust or equitable lien fails as a matter of law because Defendants cannot allege any fraudulent or wrongful conduct by Plaintiff. Fourth, Plaintiff contends that, to the extent Defendants seek a constructive trust on the settlement proceeds, recent case law only allows a constructive trust to the extent that Plaintiff recovered "title" to her medical expenses. Fifth, Plaintiff argues that Mr. Stoll is not a proper or necessary party to Defendants' Counterclaim and should be dismissed as a third-party defendant. The Court will address each argument, in turn.

**A.    The SPD and the Reimbursement Provision**

Plaintiff first argues that Defendants' Counterclaim is subject to dismissal because the reimbursement and subrogation provision violates federal standards for drafting summary plan descriptions set forth in 29 U.S.C. § 1022 and 29 C.F.R. § 2520.102.

   1.   <u>Overview of the Summary Plan Description and Reimbursement and Subrogation Provision</u>

The Summary Plan Description in effect at the time of Plaintiff's injury in 2006 is attached as Exhibit A to Defendant's Counterclaim. (Dkt. #4, Ex. A.) The document is entitled "Business Practices Guide, Personnel Policies, and Benefits Summary Plan Description," and is 246 pages long. The Table of Contents on page 3 divides the document into three sections. (*Id.*, Ex. A at 3.) Under Section 3 of the document, there are the following eight subsections listed in bold: Benefits

4

Summary Plan Description, Health & Wellness, Retirement Savings Plan, Life & Disability Insurance, Adoption Insurance, Time Off, Discounts, Important Information About Your Benefits. (*Id.*, Ex. A at 3, 32-239.)

The Situations Affecting Your Benefits subsection contains a sub-heading entitled, "Recovery of Settlements, Reimbursement and Subrogation," and provides in its entirety:

> It is the intent of this Plan that you or a covered dependent should recover only one payment for any costs that may be covered or reimbursable under the Plan.  If you or a covered dependent suffer an injury or illness for which another person may be responsible or may have a financial or insurance obligation, the Plan shall be reimbursed from any recovery you or a covered dependent may obtain, to the extent of the benefits paid by the Plan.  For example, if you are injured by another person and obtain any recovery as a result, then you must reimburse the Plan and Enterprise Rent-A-Car for medical expenses paid for such injury.
>
> If you or a covered dependent decline to pursue a recovery, the [P]lan shall be "subrogated" to your or the covered dependent's rights – i.e., the Plan shall effectively step into your shoes and possess your right to pursue a recovery – to the extent of benefits paid and to be paid.  To this end, the Plan shall have the option to bring suit against or otherwise made a claim to collect directly from the person or entity that may be responsible for the illness or injury with or without your or the covered participant's consent.
>
> "Recovery" means any and all sums of money and/or any promise to pay money in the future received by you or a covered dependent from persons, their insurers, your insurers, or a covered dependent's insurers, who may be responsible on account of the injury or illness for which the Plan has paid benefits.  "Recovery" includes payments no matter how characterized, including but not limited to sums paid or promised as compensation for actual medical expenses, pain and suffering, aggravation, wrongful death, loss of consortium to you or a covered dependent (spouse or child(ren)), punitive or exemplary damages, attorneys' fees, costs, expenses, or any other compensatory damages.  "Recovery" may be had by way of judgment, settlement, arbitration, mediation, or otherwise.
>
> If the Plan has paid you or a covered dependent benefits for medical or other expenses incurred on account of any injury or illness for which another person is responsible, and if you or a covered dependent received any recovery from the responsible person or an insurer, such recovery, up to the total amount of benefits paid or to be paid by the Plan, shall be paid to the Plan.
>
> The Plan's right to reimbursement shall not be reduced because you or a covered dependent received less in recovery than the full amount of damages claimed or suffered by you or the covered dependent unless the Plan agrees to such reduction.  Reimbursement shall not be

reduced by any costs, expenses, or attorneys' fees that you or a covered dependent incurs in connection with obtaining any recovery unless the Plan agrees to such reduction. The Plan may obtain reimbursement by reduction of future benefits payable under the Plan.

If the Plan exercises its option to seek recovery from any person or insurer who may be responsible for you or a covered dependent's injury or illness, you or the covered dependent must cooperate in pursuing such recovery, including assisting the Plan's attorneys in preparing or pursuing the case, including attendance at hearings, depositions, and trial. In the event the Plan obtains any recovery, the Plan shall apply any monies received or collected as follows: First, to the Plan as reimbursement for benefits; second, to the Plan or its attorneys for costs, expenses, and attorneys' fees incurred by the Plan in connection with the recovery; and, third, any remaining balances to you or the covered dependent. The Plan, however, may in its sole discretion, apportion the recovery in some other manner if it chooses to do so.

If you or a covered dependent suffer an injury or illness for which another person or entity, their insurer, your insurer, or a covered dependent's insurer is responsible, the Plan will pay benefits to you or a covered dependent subject to the following conditions:

1. You or the covered dependent must sign all necessary forms including, without limitation, an acknowledgment of the Plan's rights to reimbursement or subrogation and an assignment of your or the covered dependent's claims or causes f action against such other person.

2. You or the covered dependent must provide the Plan with all reasonably necessary information regarding the claim.

3. You or the covered dependent may not take any action that could prejudice the Plan's right, as set forth above, or the Plan's ability to obtain reimbursement or subrogation.

4. You or the covered dependent must promptly notify the Plan or any recovery obtained from the responsible person or entity, or their insurer, whether by judgment, settlement, arbitration, or otherwise.

(*Id.*, Ex. A at 3, 243.)[2]

    2.    <u>Standards Governing Summary Plan Descriptions</u>

Pursuant to 29 U.S.C. § 1022, ERISA plan fiduciaries are required to provide plan

---

[2]The "Recovery of Settlements, Reimbursement and Subrogation" provisions in the "Situations Affecting Your Benefits" section of Enterprise's 2007 and 2008 SPD's contain the same language as the 2006 version.

6

participants and beneficiaries with a summary description that advises participants of the terms of any employee benefit plan.  Toward this end, paragraphs (a) and (b) set forth specific requirements regarding information in summary plan descriptions and the manner in which they must be presented.  Specifically, paragraph (a) mandates that the summary plan description contain certain information listed in paragraph (b) and that it "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022(a).  Paragraph (b), in turn, lists information that must be set forth in the summary plan description, including "the plan's requirements respecting eligibility for participation and benefits," and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits[.]"  29 U.S.C. § 1022(b); *see Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1287 (9th Cir. 1990); *Stahl v. Tony's Building Materials, Inc.*, 875 F.2d 1404, 1407 (9th Cir. 1989).

Code of Federal Regulations § 2520.102 contains the implementing regulations for § 1022.  Section 2520.120-2, paragraphs (a) and (b), expand on the accessibility requirements for summary plan descriptions, providing:

> (a) Method of presentation.  The summary plan description shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan.  In fulfilling these requirements, the plan administrator shall exercise considered judgment and discretion by taking into account such factors as the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan.  Consideration of these factors will usually require the limitation or elimination of technical jargon and of long, complex sentences, the use of clarifying examples and illustrations, the use of clear cross references and a table of contents.
>
> (b) General format.  The format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries.  Any description of exception, limitations reductions, and other restrictions of the plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.  Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits.  The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations.  The description or summary of

restrictive plan provisions need not be disclosed in the summary plan description in close conjunction wit the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

29 C.F.R. § 2520.102-2(a) & (b). Concurrently, 29 C.F.R. § 2520.102-3 sets forth in detail the required content of a summary plan description. Particularly, § 2520.102-3(l) states, in relevant part, that welfare benefit plans must include "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery (e.g., by exercise of subrogation or reimbursement rights) of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits required by paragraphs (j) and (k) of this section."

### 3. Plaintiff's Challenges

Plaintiff contends that the reimbursement and subrogation provision violates the foregoing mandatory requirements in several respects. Particularly, Plaintiff asserts that the Summary Plan Description does not mention the reimbursement and subrogation provision in the benefits section, does not cross reference the provision, buries the provision at the end of the Summary Plan Description, and contains legal jargon. Plaintiff therefore asserts that the reimbursement and subrogation provision is unenforceable. Defendants, on the other hand, contend that Plaintiff's arguments concerning deficiencies in the SPD are both premature at the motion to dismiss stage and lack merit.

Reviewing Plaintiff's Motion, none of the cases that Plaintiff has cited address a challenge to a summary plan description in the context of a 12(b)(6) motion. *See Arnold v. Arrow Transp. Co. of Del.*, 926 F.2d 782, 784 (9th Cir. 1991) (issue whether limited liability provisions were adequately disclosed in summary plan description decided on bench trial); *Farr v. U.S. West Comm., Inc.*, 151 F.3d 914 (9th Cir. 1998) (issue whether defendant breached fiduciary duties under ERISA by providing misleading or incomplete information about potential adverse tax consequences in supplemental summary plan description addressed on summary judgement). Rather, based on the court's review of caselaw addressing similar challenges to summary plan descriptions generally, and reimbursement and subrogation provisions specifically, such challenges are addressed on a fully

1 developed record on summary judgment. *See Madden*, 914 F.2d at 1287 (reviewing summary
2 judgment finding that summary plan description properly notified beneficiary of reduction of
3 benefits under 29 U.S.C. § 1022(b)); *John Deere Health Benefit Plan for Salaried Employees v.*
4 *Chubb*, 45 F. Supp. 2d 1131, 1136 (D. Kan. 1999); *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202,
5 1209-10 (M.D.N.C. 1996). Accordingly, the Court will deny Plaintiff's Motion to Dismiss
6 Defendants' Counterclaim based on alleged violations of federal law pertaining to summary plan
7 descriptions without prejudice to Plaintiff re-asserting such arguments at the summary judgment
8 stage.

## B. Whether Defendants' Counterclaim is Authorized Under § 502(a) of ERISA

Next, Plaintiff asserts that Defendants' Counterclaim, which seeks to place a constructive trust or equitable lien equal to the benefits the Plan paid on Plaintiff's behalf, does not qualify as "appropriate equitable relief" under § 502(a)(3) of ERISA. (Mot. at 9.) However, as Defendants correctly point out, the Supreme Court previously analyzed a similar claim in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006). In that case, the Court held that a claim by a plan fiduciary seeking reimbursement of medical expenses paid pursuant to a third-party tort provision through a constructive trust or equitable lien constituted equitable relief under § 502(a)(3). *Id*. at 363. Further, the Court found that the basis for Mid Atlantic's claim was equitable in nature. *Id*. at 364-65. Citing *Barnes v. Alexander*, 232 U.S. 117, 121 (1914), which recognized the "familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing," the *Sereboff* Court reasoned:

> Much like Barnes' promise to Street and Alexander, the 'Acts of Third Parties' provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general asserts – "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)" – and a particular share of that fund to which Mid Atlantic was entitled – "that portion of the total recovery which is due [Mid Atlantic' for benefits paid." Like Street and Alexander in *Barnes*, therefore, Mid Atlantic could rely on a "familiar rul[e] of equity" to collect for the medical bills it had paid on the Sereboffs' behalf. This rule allowed them to "follow" a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified," and impose on that portion a constructive trust or equitable lien.

9

*Sereboff*, 547 U.S. at 364 (internal citations omitted). The Court therefore concluded that Mid Atlantic's action properly sought "equitable relief" under § 502(a)(3).

Here, Defendants seek to enforce a reimbursement and subrogation provision and impose a constructive trust or equitable lien on a portion of Plaintiff's settlement recovery equal to the amount of benefits paid under the Plan. The Counterclaim is thus indistinguishable from the claim found to be proper under § 502(a)(3) in *Sereboff*.

Nevertheless, Plaintiff argues that even if Defendants' Counterclaim seeks equitable relief, because the Plan eliminates any potential equitable defenses to the Plan's claim, the claim is neither equitable nor "appropriate" under § 503(a)(3). (Mot. at 10.) Without citing to specific language in the SPD, Plaintiff argues that the reimbursement and subrogation provision "waives every equitable defense that could be asserted against an equitable or subrogation claim, including common fund, make whole and equitable apportionment;" "purports to entitle the plan to compensation intended for pain and suffering, wrongful death, loss of consortium and attorneys' fees;" and "purports to entitle the plan to 100% reimbursement even if the injured participant gets nothing." *Id*. According to Plaintiff, "the instant provision, deliberately stripping all possible equitable defenses from a claim that is required to be equitable in nature, renders it inequitable as a matter of law." *Id*. Instead, Plaintiff asserts that the Counterclaim is "effectively seeking legal relief for breach of contractual provision, that is barred by [§ 503(a)(3)] . . . ." (Mot. at 11.)

Defendants, however, maintain that the Plan language limiting or disclaiming certain equitable defenses does not alter the equitable character of the counterclaim. (Opp. at 11.) Further, Defendants argue that courts have routinely held that such language is enforceable and that any challenge to the enforceability of such provisions is beyond the scope of a 12(b)(6) motion.

Notably, while the parties present broad arguments regarding the affect of language in the subrogation and reimbursement provision limiting Plaintiff's potential equitable defenses, neither Plaintiff nor Defendants adequately develop their positions. Plaintiff contends that language in the Situations Affecting Your Benefits Section "strips" her equitable defenses, yet Plaintiff neither identifies the specific language she is challenging, nor presents any decision holding that language

1 in an ERISA plan limiting the defenses a participant or beneficiary may assert against a claim
2 pursuant to a reimbursement or subrogation provision makes such a claim legal rather than equitable
3 in nature. Defendants, on the other hand, maintain that "courts within this Circuit and elsewhere
4 routinely enforce ERISA plan language disclaiming the 'make whole' rule or other equitable
5 doctrines (*e.g.*, common fund, or equitable apportionment), and do not hold that such disclaimers
6 present a barrier to 'appropriate equitable relief' under ERISA." (Opp. at 12.) However, the cases
7 Defendants cite focus exclusively on whether the make-whole doctrine prevents or limits a plan
8 from seeking reimbursement under an ERISA plan.

9 With respect to the applicability of the make whole doctrine in the ERISA context, the Ninth
10 Circuit previously considered this issue in *Barnes v. Independent Automobile Deals Association of*
11 *California Health & Welfare Plan*, 63 F.3d 1389 (9th Cir. 1995). In that case, the Ninth Circuit
12 "adopt[ed] as federal common law th[e] generally accepted rule that, in the absence of a clear
13 contract provision to the contrary, an insured must be made whole before an insurer can enforce its
14 right to subrogation." *Id*. at 1395. Applying this principle to the plan at issue in that case, the court
15 found that because the plan was silent as to any waiver or restriction on the make-whole rule, the
16 make-whole rule applied as a gap filler when interpreting the subrogation provision. *Id*. The Court
17 further found that because there was no dispute that the beneficiary had not been made whole by her
18 recovery, the make-whole rule limited the plan's right to subrogation. *Id*. In reaching this
19 conclusion, the Ninth Circuit expressly noted that it "would not apply the interpretive 'make-whole
20 rule' as a 'gap-filler' if the subrogation clause in the Plan document specifically allowed the Plan the
21 right of first reimbursement out of any recovery [the plaintiff] was able to obtain even if [the
22 plaintiff] were not made whole." *Id*. Thus, as Defendants correctly point out, the Ninth Circuit
23 recognized that at an ERISA plan participant's right to be made-whole may effectively be waived by
24 express contractual language. *See also Providence Health Plans of Oregon v. Simnitt*, No. 08-44-
25 HA, 2009 WL 700873, at *8-9 (D. Or. Mar. 13, 2009) (applying *Barnes* and finding that language in
26 the SPD was insufficient to disavow the make-whole doctrine); *Pioneer Title Co. Employee Welfare*
27 *Benefit Trust v. Tague*, No. 1:08-CV-461, 2009 WL 1687966, at 6 (D. Idaho June 17, 2009).
28

1   With *Barnes* as guidance, the question here becomes whether the language in the
2   reimbursement and subrogation provision sufficiently waived Plaintiff's right to be made-whole.
3   Because neither party has briefed this issue and because it involves interpretation of the Plan - a
4   matter generally addressed on summary judgment - the Court declines to reach this question at this
5   juncture. The Court therefore denies Plaintiff's argument without prejudice. However, the parties'
6   current briefing should frame the issue for summary judgment. Particularly, given that the Ninth
7   Circuit has held that at least one equitable right can be expressly waived in an ERISA plan, does this
8   reasoning apply by extension to other equitable defenses, and if so, does it have any affect on
9   character of equitable relief sought pursuant to § 503(a)(3).

**C. Failure to Plead Fraud or Wrongful Conduct**

Third, Plaintiff argues that Defendants' Counterclaim seeking a constructive trust or an equitable lien fails because Defendants cannot establish fraud or wrongful conduct by Plaintiff. (Mot. at 11.) In support, Plaintiff cites several Ninth Circuit cases for the proposition that restitution and the imposition of a constructive trust are only available under § 502(a)(3) if the traditional elements of fraud or wrong-doing are established. (Mot. at 11) (citing *Carpenters H&W Trust v. Vonderharr*, 384 F.3d 667, 672 (9th Cir. 2004); *FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir. 1997); *Cement Masons v. Stone*, 197 F.3d 1003, 1006 (9th Cir. 1999); *Reynolds Metals v. Ellis*, 202 F.3d 1246, 1249 (9th Cir. 2000); *Westaff v. Arce*, 298 F.3d 1164 (9th Cir. 2002); *Honolulu Joint Apprenticeship & Training Committee of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234 (9th Cir. 2003)). However, as Defendants correctly point out, each of these pre-dates *Sereboff*. In that case, the Supreme Court expressly outlined what a plan fiduciary must establish in order to be entitled to a constructive trust or equitable lien by agreement pursuant to a reimbursement or subrogation provision in an ERISA plan. In its discussion, the Court did not indicate that a plan fiduciary may only be entitled to this remedy if it is able to show fraud or wrong-doing by the beneficiary. Rather, to be entitled to a constructive trust or a lien by agreement, the plan fiduciary must: (a) identify particular funds or property in the beneficiary's possession or control that is distinct from the beneficiary's general asserts from which reimbursement will be taken; and (2)

12

specify a particular share of that fund to which the fiduciary is entitled. *Id*. at 364; *see also Administrative Committee for Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Salazar* 525 F. Supp. 2d 1103, 1111 (D. Ariz. 2007).

Here, Defendants have alleged sufficient facts to support each of these elements. *See* Counterclaim, ¶¶ 11-17, 36-38. Plaintiff has not cited any authority after *Sereboff* indicating that the plan fiduciary must also establish fraud or wrongdoing in order to create a constructive trust or equitable lien by agreement. Thus, Defendants' allegations are sufficient to state an actionable claim under *Sereboff*.

### D. Whether Plaintiff Obtained "Title" to her Medical Expenses

Plaintiff next contends that, under the Supreme Court's decisions in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002)*,* and *Sereboff*, any claim seeking a constructive trust or equitable lien is limited to the past medical expenses that the Plan actually paid and for which she actually recovered through her settlement. (Mot. at 16.) According to Plaintiff, this requires an equitable apportionment of her settlement recovery. Notably, Plaintiff also states that, "[i]t is expected that the evidence in this case will show that [P]laintiff recovered only a modest portion of [her medical bills]." (Mot. at 16.) Additionally, Plaintiff states that she "makes an offer of proof that she believes that she recovered approximately 15% of the medical expenses which the plan paid in her personal injury case." (Mot. at 18-19.)

As Defendant correctly points out, because Plaintiff's argument goes beyond the allegations in the pleadings and relies on facts and evidence not in the record (and which Defendants dispute) , Plaintiff's argument is improperly raised in a 12(b)(6) motion. The Court therefore denies Plaintiff's argument without prejudice to Plaintiff re-asserting it at the summary judgment stage.

### E. Dismissal of Defendant Albert Stoll

In her Motion, Plaintiff argued that her counsel, Mr Stoll, was not a proper or necessary party to the counterclaim and should be dismissed as a third-party defendant. (Mot. at 19.) On December 7, 2009, the Court approved the parties' stipulation dismissing Mr. Stoll as a third-party defendant. (Dkt. #24.) Accordingly, the Court denies this argument as moot.

### IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Dismiss (Dkt. #14).

**IT IS SO ORDERED.**

Dated: September 30, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge